# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**TAZZAR NELMS,**

> **Petitioner,**

> **v.**

> **CASE NO. 2:08-cv-636**
> **JUDGE WATSON**
> **MAGISTRATE JUDGE KING**

**MICHAEL SHEETS, Warden,**

> **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, Doc. No. 2, respondent's return of writ, Doc. No. 6, petitioner's traverse, Doc. No. 9, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant, Tazzar Nelms ("appellant"), filed this appeal from a judgment by the Franklin County Court of Common Pleas whereby he was convicted of one charge of murder, one charge of felonious assault, and one charge of having a weapon while under a disability in case No. 06CR-02-1351; and one charge of carrying a concealed weapon, one charge of improper handling of a firearm in a motor vehicle, and one charge of having a weapon while under a disability in case No. 06CR-02-1349.
>
> Case No. 06CR-02-1351 arose from the shooting death of Terry

Harper ("Harper") some time on the night of October 10, 2004. Christopher Willis ("Willis") testified that at the time of the shooting, he was living at 1321 East 26th Avenue with appellant and an individual named Thomas Knight ("Knight"). Willis testified that the house was being used as a place from which illegal drugs were being sold.

On the night in question, Willis arrived at the house at approximately 10:30. Appellant, Knight, Marc Corbin, and Michael Corbin were already present. The group ate pizza, played dice, and smoked marijuana. At some point, Willis went upstairs and went to bed. He was awakened by the sound of gunshots, and heard Michael Corbin calling him downstairs. Upon coming downstairs, Willis saw Harper, a person Willis knew because Harper stayed at the house sometimes, sitting down against a wall holding his leg, appellant holding a black 40-caliber handgun, and Michael Corbin holding a silver colored handgun. Willis and the others then left the house without contacting police. Two days later, Willis contacted police because he was concerned about being implicated in the shooting.

The day following the shooting, Columbus police were dispatched to the house after a maintenance man reported seeing what he believed was a body inside the residence. Officer Michael Friend found the dead body of Harper lying face down on the living room floor. Patrick Fardal ("Fardal") of the Franklin County Coroner's office testified that there were three gunshot wounds in Harper's legs. Fardal further stated that he believed two of the wounds had been caused by a single bullet passing through both legs. The cause of death was loss of blood caused by one of the bullets severing the left femoral artery.

Columbus Police detectives recovered a number of items from the scene. Two 40-caliber shell casings were found, one in the living room and one next to the front door. In addition, two spent lead bullets or bullet fragments were found in the area of the front door. In the south upstairs bedroom of the house, detectives found a manual for a Beretta handgun, a Beretta gun-lock, and three live rounds for a nine-millimeter Lugar. In

the north upstairs bedroom, detectives found Willis' wallet.

On April 9, 2005, members of the Columbus police strategic response unit were working in the area of the Ebonics Night Club, located on the corner of Fifth and Alton Avenues. The area is known as a high-crime area. A group of officers pulled into the parking lot across the street commonly used by patrons of the club. Officer Duane Mabry testified that as the officers pulled into the lot, they saw a 2005 Jeep Liberty backed into a parking space. Three individuals later identified as appellant, Knight, and Roger McCullough ("McCullough") were sitting in the vehicle, with appellant in the driver's seat, McCullough in the front passenger seat, and Knight in the back seat behind the driver's seat. Each of the three men made movements toward the floor beneath their seats, as if hiding something.

As police approached the vehicle, all three men exited the vehicle and began walking toward the club. Officer Mabry noticed that one of the windows had been left down, and there were CDs and other items of value left out in the open. Officer Mabry asked Knight, who had been the last to leave the vehicle, if he was going to leave the window down with the items in plain sight, to which Knight responded in the affirmative. By that point, appellant and McCullough had started to cross the street toward the club. Officer Mabry approached the open window of the vehicle, and smelled what he recognized to be the odor of marijuana. Officer Mabry then ordered Knight to stop, and told other officers to stop appellant and McCullough, who had crossed the street and were approaching the door to the club.

The officers then searched the vehicle. Underneath the back passenger's seat in which Knight had been sitting, the officers found a clear plastic bag of marijuana. Underneath the driver's seat where appellant had been sitting, the officers found a loaded 40-caliber handgun with the handle pointed toward the front of the vehicle. The officers found another loaded firearm in the front passenger's door compartment.

Mark Hardy ("Hardy"), a criminalist with the Columbus Police

Department, performed testing on the 40-caliber Beretta recovered from the Jeep Liberty. Hardy concluded that the shell casings found at the scene of Harper's shooting had been fired from the Beretta. Hardy further concluded that one of the spent bullet fragments recovered from the scene had been fired from the Beretta.

In case No. 06CR-02-1351, appellant was indicted by the Franklin County Grand Jury on one charge of murder in violation of R.C. 2903.02 for purposely causing the death of Harper, one count of murder in violation of R.C. 2903.02 for causing Harper's death while committing or attempting to commit felonious assault, one count of felonious assault in violation of R.C. 2903.11, and one count of having a weapon while under a disability in violation of R.C. 2923.13. The two murder counts and the felonious assault count each had firearm specifications. In case No. 06CR-02-1349, appellant was indicted by the grand jury on one count of carrying a concealed weapon in violation of R.C. 2923.12, one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16, and one count of having a weapon while under a disability in violation of R.C. 2923.13.

The state filed a motion seeking to join the two cases for trial, which the trial court granted over appellant's objection. The case then proceeded to trial. The two murder charges, the felonious assault charge, the carrying a concealed weapon charge, and the improper handling of a firearm charge were tried to a jury. Appellant waived his right to a jury trial on the two charges of having a weapon while under a disability and agreed to have those charges tried to the court. The jury acquitted appellant on the murder charge that alleged he purposely killed Harper, but convicted appellant of the remaining charges tried to the jury. The court convicted appellant of both of the charges of having a weapon while under a disability.

*State v. Nelms*, 2007 WL 2633529 (Ohio App. 10th Dist. September 11, 2007). Petitioner filed

a timely appeal, in which he asserted the following assignments of error:

> I. Appellant was denied a Fair Trial as guaranteed by the Sixth and Fourteenth Amendment[s] of the United States Constitution in that the Defendant was Denied Effective Assistance of Counsel.
>
> II. The Trial Court Erred in Allowing Joinder of Indictments for Purposes of Trial.
>
> III. Appellant's Convictions Were Not Supported by the Evidence and were Against the Manifest Weight of the Evidence.

*See id.* On September 11, 2007, the appellate court affirmed the judgment of the trial court.

*Id.* On January 23, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Nelms,* 116 Ohio St.3d 1480 (2008).

On June 30, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Petitioner was denied a fair trial as guaranteed by the Sixth Amendment and was denied effective assistance of counsel.
>
> Counsel failed to pursue a suppression hearing of the firearm, which was obtained illegally in a search and seizure.
>
> 2. Petitioner was denied due process when the evidence was insufficient to convict beyond [a] reasonable doubt.
>
> There is no specific physical evidence that petitioner murdered the victim in question. Th[ere] is no testimony that corroborates Chris Willis that petitioner was present at the residence.
>
> 3. Petitioner was denied due process when the trial court

allowed joinder of indictments.

Due process was violated when the trial court joined the indictments when petitioner was prejudiced by the inability to testify in one case and not the other.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state

procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

It is the position of the respondent that petitioner has procedurally defaulted claim three because he failed to raise that claim on appeal to the Ohio Supreme Court. *See Exhibit 16 to Return of Writ*. Petitioner acknowledges that he has indeed waived his right to present claim three in these federal habeas corpus proceedings. *See Traverse*, at 1.

Claim three is waived.

## CLAIM ONE

In claim one, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to pursue a motion to suppress evidence. The state appellate

court rejected this claim as follows:

> In his first assignment of error, appellant argues that he was
> denied effective assistance of counsel as a result of his trial
> counsel's failure to pursue a motion to suppress regarding the
> Beretta handgun recovered from the Jeep Liberty. Appellant's
> trial counsel filed a motion to suppress, but neither requested
> a hearing nor withdrew the motion.

> In order to prevail on a claim of ineffective assistance of
> counsel, appellant must show that his counsel's performance
> fell below an objective standard of reasonableness, and that he
> suffered prejudice as a result. *Strickland v. Washington* (1984),
> 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The court in
> *Strickland* recognized that "a court must indulge a strong
> presumption that counsel's conduct falls within the wide range
> of reasonable professional assistance[.]" *Id.* at 689. In analyzing
> claims of ineffective assistance of counsel, courts have applied
> a two-part test where "[t]he defendant must show (1) deficient
> performance by counsel, i.e., performance falling below an
> objective standard of reasonable representation, and (2)
> resulting prejudice, i.e., a reasonable probability that, but for
> counsel's errors, the proceeding's result would have been
> different." *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, at
> ¶ 76, 822 N.E.2d 1239.

> The failure to file or pursue a motion to suppress does not
> automatically constitute ineffective assistance of counsel. *State
> v. Madrigal,* 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52.
> Failure to file a motion to suppress can only constitute
> ineffective assistance of counsel where the record demonstrates
> that the motion would have been granted. *State v. Lee*, Franklin
> App. No. 06AP-226, 2007-Ohio-1594, citing *State v. Robinson*
> (1996), 108 Ohio App.3d 428, 670 N.E.2d 1077.

> Appellant argues that there would have been a basis to grant
> the motion to suppress because the search of the Jeep Liberty
> stemmed from an investigative stop that was not supported by
> a reasonable articulable suspicion that illegal activity was

occurring, in violation of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Whether an investigative stop was based on a reasonable articulable suspicion depends upon the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Factors that may justify an investigative stop include: (1) the location of the stop; (2) the officer's experience, training, or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

In this case, Officer Mabry testified that the parking lot outside the nightclub had been the site of prior arrests for drug and weapons violations. Officer Mabry also testified that as he approached the Jeep Liberty, the three occupants behaved in a suspicious manner, each reaching down toward the floor of the vehicle out of the officer's line of sight. The three then left the vehicle and attempted to cross the street to the nightclub, leaving the windows down with property lying out in plain sight. Officer Mabry then smelled what, based on his training and experience, he recognized as the smell of marijuana. See *State v. Coston*, 168 Ohio App.3d 278, 2006-Ohio-3961, 859 N.E.2d 990 (officer trained in the detection of marijuana may rely on smell to justify search for marijuana).

Under these circumstances, Officer Mabry had a reasonable basis for conducting an investigative stop, and any motion to suppress the evidence ultimately found as a result of that stop would not have been successful. Consequently, appellant could not have suffered any prejudice from his trial counsel's failure to pursue the motion to suppress, even assuming that this decision fell outside the wide range of reasonable trial strategy.

*State v. Nelms, supra.* The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of

> habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision will be deemed an "unreasonable

application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

Petitioner does not dispute the factual findings of the state appellate court, but contends that the state appellate court's decision denying his claim of ineffective assistance of counsel was an unreasonable application of federal law. *See Petition; Traverse.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177

(6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id.,* at 689. To establish the ineffective assistance of counsel based on his attorney's failure to file a motion to suppress evidence seized as illegally obtained, petitioner must

> must also prove that his Fourth Amendment claim is
> meritorious and that there is a reasonable probability that the
> verdict would have been different absent the excludable
> evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Petitioner contends that Officer Mabry illegally searched the vehicle by poking his head through the window of the car, looking for evidence of wrongdoing. *Petition*, at 8. However, the record fails to support petitioner's argument. As discussed by the state appellate court, Mabry testified that petitioner was in the driver's seat of a Jeep parked in

the parking lot used by patrons of the Ebonics Night Club, in a high crime area, where arrests are regularly made in connection with guns and drugs. *Trial Transcript*, at 227-229. As Officer Mabry approached the car, petitioner and the two passengers "made movements underneath their seats as if to hide something." *Id.,* at 230. All three men exited the car and began to walk toward the club. *Id.,* at 232. As Mabry approached the vehicle, he noticed that the window was down. *Id.,* at 233. He thought that this was odd, since he could see items of value in the car. *Id.,* at 234. Mabry approached the open window and smelled the odor of marijuana. *Id.,* at 234-235. Nothing in the record indicates that Officer Mabry stuck his head inside the car. Upon smelling the odor of marijuana, Mabry conducted a *Terry* pat down of Thomas Knight, who had been a passenger in the car, and told Detective Slaughter and Brooks to stop petitioner and the other car passenger. *Id.,* at 235-236. He searched the vehicle and found marijuana, crack cocaine and a loaded .40 caliber Beretta under the driver's seat where petitioner had been sitting. *Id.,* at 236-237. Police also seized a loaded firearm from the front passenger's door compartment. *Id.,* at 241.

> The protections of the Fourth Amendment "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (internal citation and quotation marks omitted). However, pursuant to *Terry*, a warrantless encounter may be countenanced under the Fourth Amendment if an officer has reasonable suspicion that criminal activity may be afoot. In such circumstances, the officer may conduct a brief traffic stop for investigative purposes and make reasonable inquiries to confirm or dispel his suspicions. *United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000). Reasonable suspicion " 'requires more

than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.' " *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (quoting *Smoak v. Hall*, 460 F.3d 768, 778-79 (6th Cir. 2006)).

The lawfulness of an investigatory stop is judged by the totality of the circumstances to "determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006) (internal citation and quotation marks omitted). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (internal citation and quotation marks omitted). Pertinent circumstances include the officer's own direct observations, dispatch information, directions from other officers, and the nature of the area and time of day during which the suspicious activity occurred. *Pearce,* 531 F.3d at 383; *Dorsey,* 517 F.3d at 395. "[W]hile an 'individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime,' police 'officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.' " *Pearce,* 531 F.3d at 383 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

*United States v. Campbell*, 549 F.3d 364, 370-371 (6th Cir. 2008). "The smell of drugs emanating from a vehicle is a legitimate basis for reasonable suspicion" to justify a *Terry* investigative stop. *United States v. Atkins*, 198 F.3d 247, unpublished, 1999 WL 1045942 *4

(6th Cir. November 8, 1999), citing *United States v. Palomino*, 100 F.3d 446, 448 (6th Cir. 1996);

*United States v. Garza*, 10 F.3d 1241, 1244 (6th Cir. 1993).

> In general, the Fourth Amendment requires that all searches and seizures be supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 369, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Although searches must normally be conducted pursuant to a warrant, under the well-known automobile exception, a warrantless search of a vehicle that has been stopped lawfully is permissible if the search is based upon probable cause. *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *United States v. Pasquarille*, 20 F.3d 682, 690 (6th Cir. 1994). "Probable cause is defined as reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion, and is found to exist when there is a fair probability that evidence of a crime will be located on the premises of the proposed search." *Jackson*, 470 F.3d at 306 (internal quotation marks and citations omitted).
>
> Thus, in determining the admissibility of evidence seized during a warrantless search of a vehicle ... we must answer two questions: first, whether the initial stop of the vehicle was supported by reasonable suspicion and, second, whether the subsequent search of the vehicle was supported by probable cause. *United States v. Foster*, 376 F.3d 577, 584-85 (6th Cir. 2004); *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).

*United States v. Crumb*, 287 Fed.Appx. 511, 513, unpublished, 2008 WL 2906770 (6th Cir. July 28, 2008). Additionally, upon smelling the odor of marijuana emanating from the Jeep, police had probable cause to believe there was marijuana in the vehicle, thereby justifying the search of the vehicle. *See United States v. Garza, supra,* 10 F.3d at 1247. The United States Court of Appeals for the Sixth Circuit has "consistently" held "that the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle." *United States v. Crumb, supra*, citing *United States v. Puckett*, 422 F.3d 340, 343

(6th Cir. 2005); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004); *United States v. Elkins*,

300 F.3d 638, 659 (6th Cir. 2002); *United States v. Simpson*, 520 F.3d 531, 544-45 (6th Cir. 2008);

*United States v. Littleton,* 15 Fed.Appx. 189, 193 (6th Cir. 2001).

Therefore, petitioner has failed to establish that the state appellate court's rejection

of his claim of ineffective assistance of counsel was unreasonable so as to warrant federal

habeas corpus relief.

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that the evidence is constitutionally insufficient to

sustain his murder conviction. The state appellate court rejected this claim as follows:

> [A]ppellant argues that his convictions were not supported by
> the evidence and were against the manifest weight of the
> evidence. As set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259,
> 574 N.E.2d 492, when reviewing the sufficiency of the evidence
> supporting a criminal conviction, an appellate court must
> examine the evidence submitted at trial to determine whether
> such evidence, if believed, would convince an average person
> of the defendant's guilt beyond a reasonable doubt. The
> relevant inquiry is whether, after viewing the evidence in a
> light most favorable to the prosecution, any rational trier of
> fact could have found the essential elements of the crime
> proven beyond a reasonable doubt. *Id.* at paragraph 2 of the
> syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319,
> 99 S.Ct. 2781, 61 L.Ed.2d 560.
>
> This test raises a question of law and does not allow the court
> to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d
> 172, 485 N.E.2d 717. Rather, the sufficiency of the evidence test
> "gives full play to the responsibility of the trier of fact fairly to
> resolve conflicts in the testimony, to weigh the evidence, and
> to draw reasonable inferences from basic facts to ultimate

facts." *Jackson,* supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. *Jenks,* supra, at 279.

\*\*\*

Although appellant's third assignment of error appears to address his convictions in both cases, his argument is directed entirely at the testimony of Willis, which relates only to those charges stemming from the October 10, 2004 shooting death of Harper. Appellant was acquitted on the charge that he committed murder by purposely causing Harper's death, but convicted on the charge that he committed murder by causing Harper's death as the proximate result of his commission of felonious assault, as well as on the underlying charge of felonious assault and the charge that he had a weapon while under a disability at the time of the incident.

No testimony was offered directly implicating appellant as the person who shot Harper. Willis testified that he was upstairs asleep when he was awakened by the sound of gunshots and someone telling him to come downstairs. Willis further testified that he came downstairs and saw Harper sitting on the floor leaning against the wall, having apparently been shot, and appellant holding a black 40-caliber handgun, which he identified as the Beretta handgun that was entered into evidence. The Beretta was subsequently found in the vehicle underneath the seat in which appellant was sitting. Two shell casings and one bullet fragment discovered at the scene of the shooting were found to have been fired from the Beretta.

Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that appellant was the person who shot Harper, and from this evidence the jury could have reasonably concluded that appellant was guilty of felonious assault, and therefore was guilty of murder for proximately causing Harper's death by the commission of that felonious assault. As such, there was sufficient evidence to support appellant's convictions.

*State v. Nelms, supra.*  Again, the factual findings of the state appellate court are presumed

to be correct.  *See* 28 U.S.C. §2254(e).  Further, federal habeas relief is not warranted unless the state appellate court's decision contravened or unreasonably applied clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. §2254(d); *Williams v. Taylor, supra*. Petitioner has failed to meet this standard here.

To the extent that petitioner contends that his conviction was against the manifest weight of the evidence, such claim is not appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983).  In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969.

However, under Ohio law, a claim that a verdict is against the manifest weight of the evidence -- as opposed to one based upon insufficient evidence -- requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and

consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Petitioner does assert that the evidence was constitutionally insufficient to sustain his conviction. Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact in finding guilt beyond a reasonable doubt. *Jackson v. Virginia, supra*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume -- even if it does not appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Petitioner contends that the State failed to establish that he purposely shot Harper, because the bullet wounds that caused Harper's death were located in his legs, and not in his head or chest. Additionally, petitioner complains that the State failed to establish any

motive for the killing, and contends that the evidence was against him was circumstantial in nature. *Petition*, at 10-14; *Traverse*, at 7. However, as discussed by the state appellate court, petitioner "was acquitted on the charge that he committed murder by purposely causing Harper's death, but convicted on the charge that he committed murder by causing Harper's death as the proximate result of his commission of felonious assault." *State v. Nelms, supra*. Further,

> "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'" [*United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)] quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

*United States v. Blackwell*, 459 F.3d 739, 760 (6th Cir. 2006). For the reasons discussed by the state appellate court, this Court likewise concludes that, viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence was constitutionally sufficient to sustain petitioner's conviction.

Claim two is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


<u>November 24, 2009</u>                                             <u> *s/Norah McCann King*         </u>
                                                                    Norah McCann King
                                                                    United States Magistrate Judge